**UNITED STATES of America**

**v.**

**Phillip F. ZANDERS, Defendant.**

**Crim. No. 82–00250.**

United States District Court,
District of Columbia.

Sept. 23, 1982.

---

Charles J. Harkins, Jr., U.S. Atty.-DCMC, for plaintiff.

William J. Garber, Washington, D. C., for defendant.

## MEMORANDUM and ORDER

OBERDORFER, District Judge.

Defendant is charged with possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) (1936) (1976). He moves to suppress as evidence (1) a sawed-off shotgun which was fully loaded when seized from defendant, and (2) a statement which he made after his arrest in which he related that he had found the shotgun and was taking it to his mother to turn it over to the police. After hearing testimony by one of the two officers who made the seizure and by defendant, and after considering briefs and arguments by counsel, the Court will deny the motion to suppress the weapon and grant the motion to preclude use of the statement.

Although defendant disputes some of the officer's testimony, the essential facts are straightforward. At about 2:00 a. m. on August 6, 1982, Washington Metropolitan Police Officers Lara and Ramirez were patrolling by patrol car along a street in Southeast Washington, an area where there had been numerous armed robberies. In fact, earlier that evening the officers had been told by their sergeant that three individuals, one of whom was a young black male, 5′5″–5′7″ tall with short cropped hair, were suspected of using hand guns to commit armed robberies in the area. The temperature at the time was in the 80's and the humidity was in that range or higher. Near the intersection of 12th & D Streets, the officers drove past and observed defendant, a young black male of slight stature with short cropped hair, walking along the sidewalk wearing an unbuttoned, knee-length winter weight coat.

Officer Lara, who had 13 years of police experience in that area, pointed defendant out to his partner, whereupon the officers made a U turn. Officer Lara mentioned to his partner that defendant might be armed. Lara testified that he was "very apprehensive" regarding defendant. As the officers drove back toward defendant, he crossed the street in front of their car in the middle of the block. They pulled up to the curb near defendant and accosted him, one officer on each side of him. Officer Lara testified that from this stance he asked defendant if he had identification and the defendant replied in the affirmative.[1] Lara then told defendant that for the officers' protection they were going to pat down the defendant. He demurred. Nevertheless, Lara approached defendant to pat him down and, according to Lara, defendant suddenly made a motion with both hands in the direction of his beltline. Lara immediately grabbed defendant in a yoke grip, a wrist pressing on defendant's throat. Lara's partner then reached inside the open coat and removed a cocked and loaded sawed-off shotgun.

---

1. Defendant testified that he told the officers that he had identification, but that it was at home, and that he offered to show it to the officers if they would take him home to get it.

Defendant continued to struggle under the yoke grip as Lara attempted to move him toward the parked police car. As Lara's grip loosened, his partner and then Lara struck defendant with their fists, thereby subduing him. After handcuffing defendant, they took him to their station house.

At some disputed time after the stop, search, arrest, and beating, defendant made what was apparently intended to be an exculpatory statement about finding the shotgun. His counsel is concerned that this statement could be inculpatory in certain contexts. According to Lara, he had immediately given defendant an oral *Miranda*[2] warning on the street after subduing him, and later witnessed defendant sign a printed *Miranda* form (PD–47) at the station house. When, at the suppression hearing defendant's counsel asked Lara to produce the completed written form, Lara could not find it in the file he had with him on the witness stand, and government counsel indicated that he did not have it at counsel table. On cross-examination Officer Lara was unable to recall specifically whether he ever saw defendant complete the specific elements of the prescribed waiver form.

■ The officers were attracted to defendant by his wearing a coat at 2:00 a. m. on a hot August night. They had also been advised at roll call that evening that there had been robberies in the area where they sighted defendant, and three suspects had been described, albeit without exquisite precision. Even discounting the alert about robberies and robbers, the Court is satisfied that in the circumstances the officers had "specific, articulable facts, which taken together with rational inferences from those facts, reasonably warranted" their approaching a person walking down a street in a high-crime area wearing a winter overcoat on a hot August night, asking him for identification and patting him down, both for their protection before production of the identification and as a predicate for a search for concealed weapons. *See Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20

L.Ed.2d 889 (1968); *United States v. White,* 648 F.2d 29, 33 (D.C.Cir.1981). A reasonable police officer could suspect, and Officer Lara did suspect, that the overcoat concealed a weapon. Consequently, the motion to suppress the weapon is denied.

■ The police did not, however, establish that the exculpatory/inculpatory statement was voluntarily made. The yoke grip was appropriate for disarming the defendant. But the two officers, one 6' and 230 pounds, and the other 5'10" and "normal" size, hit the slight defendant (he is 18 and about 5'4" and 120 pounds) with their fists instead of merely grappling him to get him to the car. They necessarily intimidated him, not only by the direct effect of those blows, but also by the implied threat that if defendant did not do as they wished, they could and would hit him again. *See e.g. Chambers v. Florida,* 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940). Furthermore, the failure of the government to produce the written *Miranda* waiver does not strengthen their claim that defendant made the questioned statement voluntarily. The Court finds that he did not. The motion to suppress the statement is thus granted.

IT IS SO ORDERED.

---

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.      1602, 16 L.Ed.2d 694 (1966).